UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 11-647(WJM) |
| v. | : | NOTICE OF PRETRIAL MOTIONS |
| | : | |
| | : | |
| NARIK WILSON | : | |

TO: Michael Robertson, ESQ.
    Assistant U.S. Attorney
    970 Broad Street
    Newark, New Jersey 07102


      PLEASE TAKE NOTICE that Angelo Servidio, Esq., attorney for defendant Narik

Wilson, will move before the Honorable William J. Martini, United States District Judge for the

District of New Jersey, at Newark, on a date and time to be set by the Court:

      (1)    For an Order compelling the government to disclose pretrial any "other crimes"

evidence;

      (2)  For a pretrial determination of the admissibility of evidence pursuant to Fed.R.Evid.

609(a)(1) and (2);

      (3)  For an Order providing that the government disclose all favorable information to the

defense pursuant to Brady v. Maryland, 373 U.S. 583 (1963);

      (4)  For an Order providing early disclosure of all Jencks, materials;

      (5) For an Order requiring that the government review the personnel files of law

enforcement officers who participated in the case and disclose any information that may be helpful to the defense;

(6)  For an Order requiring that the government prepare and produce, prior to trial, a summary of opinion testimony which the government intends to introduce through any witness testifying as an expert;

(7)  For an Order permitting the defendant to file whatever additional motions that are necessary as discovery is provided.

(8)    For an Order granting an evidentiary hearing regarding the admissibility of identification evidence at trial.

(9)    For an Order for Severance of counts two and four.

Defendant shall rely on the memorandum of law submitted herewith and requests oral argument.

Respectfully submitted,

s/Angelo Servidio, Esq.
Angelo Servidio, Esq.
Attorney for defendant,
Narik Wilson

## CERTIFICATE OF SERVICE

       I hereby certify that a copy of Notice of Pretrial Motions and Supporting Memorandum of Law, was served, by United States Mail and by electronic delivery, on Michael Robertson, Esq., Assistant United States Attorney, 970 Broad Street, Newark, New Jersey 07102, on the 13th day of December, 2011.

                           s/ Angelo Servidio, Esq.

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA   :
   :
   :   CRIMINAL NO. 11-647(WJM)
     v.   :
   :
   :
NARIK WILSON   :

_____

MEMORANDUM IN SUPPORT OF PRETRIAL MOTIONS

_____

Angelo Servidio, Esq.

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY


UNITED STATES OF AMERICA    :
                           :    CRIMINAL NO. 11-647(WJM)
    v.                     :         ORDER
                           :
                           :
NARIK WILSON             :


        This matter having been brought before the Court on the application of defendant, Narik Wilson, by his attorney, Angelo Servidio, Esq., for an Order pursuant to defendant's pretrial motions, and Michael Robertson, Esq., Assistant United States Attorney, appearing, argument having been heard and good cause shown,

        IT IS ON this     day of            , 2011, hereby

        ORDERED that the relief requested is granted:


                        _____
                        HONORABLE WILLIAM J. MARTINI
                        UNITED STATES DISTRICT JUDGE

## **STATEMENT OF THE MATTER**

Indictment 11-647 charges Narik Wilson with:

Count I:  Conspiracy to Distribute and to Possess With Intent to
Distribute Heroin (a Schedule 1 controlled substance) and Cocaine
(a Schedule 2 controlled substance), contrary to 21 USC § 841(a)(1)
and § 841(b)(1)(C), and in violation of 21 USC § 846(a).

Count II:  Knowing and Willful Use and Carry of a Firearm in Furtherance of a
Drug Trafficking Crime, in violation of 18 USC § 924(c)(1)(A)(i)(a) and Section 2.

Count III:  Possession of Firearms and Ammunition While Having
Been Convicted of a Crime Punishable by a Term Exceeding One Year,
in violation of 18 USC § 922(g)(1).

Count IV:  Knowing and Willful Use and Carry of Firearms In Furtherance of a
Crime in Relation to Drug Trafficking, in violation of 18 USC
§ 924(c)(1)(A)(i) and Section 2.

Count V:  Knowing and Willful Use and Carry of Firearms in and Effecting
Commerce, Having Been Convicted of a Crime, in violation of 18 USC § 922(g)(1).

Count VI:  Distribution and Possession with Intent to Distribute Heroin,
(a Schedule 1 controlled substance)in violation of 21 USC § 841(a)(1)
and 841(b)(1)(C); and 18 USC Section 2.

According to discovery, the government alleges that Narik Wilson along with others, known and

unknown, were leaders, members and associates of a criminal organization known as Sex, Money,

Murder (SMM), which is alleged to be a set of the Bloods Street Gang operating in and around Essex

County, New Jersey.  Narik Wilson along with others distributed drugs and possessed firearms in

furtherance of drug trafficking.  It is alleged that Narik Wilson and others belonging to SMM stored

narcotics, firearms and ammunition to protect their drug trafficking activities.

On May 11, 2011 the government commenced an investigation of Narik Wilson as a cooperative effort between the DEA and a local task force.  On April 28, 2011 the government obtained information that automatic weapons were being stored at an apartment located at 725 Martin Luther King Boulevard in Newark, New Jersey.  The government seized the weapons and ammunition, and allege that same belong to members of the Blood, Sex, Money, Murder Street Gang.

The government further alleges that On May 20, 2011, an undercover ATF agent purchased ten bricks of heroin from Narik Wilson for $1,900.00 in advanced funds in the vicinity of Spruce and Quitman Streets in Newark, New Jersey.  Undercover recordings are said to show:  a conversation between a co-conspirator named Rajohn Wilson on May 20, 2011 discussed the purchase of a BMW; recordings of an Unidentified Informant (UI) and Narik Wilson on May 25, 2011 with regard to the purchase of heroin on May 25, 2011; and a conversation between the UI, Narik Wilson and alleged co-conspirator Kenyon Simon, discussing the purchase of heroin for $1,900.00.

On July 18, 2011, Newark Narcotics Detectives received information that weapons were being stored in an apartment in Newark, New Jersey located at 90 Spruce Street.  Automatic weapons and ammunition were recovered at that time.  The Newark Police Department conducted ballistics tests.  Other evidence retrieved from the location was subsequently forwarded by the government to FBI Labratories in Quantico, Virginia for DNA testing.  This included items such as: cigarette butts, cotton swabs of toilet urine samples, a White Castle cup, a red plastic cup from the apartment kitchen sink, a cranberry juice bottle, a soda bottle and a green toothbrush.

Based on the investigation and evidence recovered a warrant was executed for the arrest of Narik Wilson.  Mr. Wilson subsequently appeared in Federal Court pursuant to Federal Rule of Criminal Procedure 5.

7

## POINT I

**THE GOVERNMENT SHOULD BE COMPELLED
TO DISCLOSE PRETRIAL ANY EVIDENCE
IT INTENDS TO INTRODUCE PURSUANT
TO FED.R.EVID. 404(b) SO THAT THE
COURT MAY MAKE AN <u>IN LIMINE</u> RULING
AS TO THE ADMISSIBILITY OF SAME.**

Fed.R.Evid. 404(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith, but such evidence may be admissible for other purposes.  Fundamental fairness requires pretrial disclosure of the government's intentions in this regard for the following reasons:

> (1)  To obviate the necessity of curative instructions should the Court, after the fact, determine that certain evidence should not have been developed in the presence of the jury;

> (2)  to provide counsel an opportunity to meet the proffered other crimes evidence in the course of his opening statement to the jury; and

> (3)  to permit the defendant and counsel to decide prior to this opening statement, the crucial question of whether or not defendant should testify in her own defense.

Additionally, if the government intends to offer or refer to any "bad act" evidence in its case-in-chief, the defendant desires the opportunity to review said material in order to determine its relevance,

along with its probative value and prejudicial effect, and thereby assist the trial court in its balancing of these factors prior to the Court's necessary exercise of its discretion under Fed.R.Evid. 401 and 403.

The defendant, therefore, respectfully requests that the Court require that the government disclose its position with regard to 404(b) material[1] prior to trial and that the Court make in limine rulings.

## POINT II

### DEFENDANT MOVES IN LIMINE FOR A HEARING AS TO WHETHER ANY PRIOR CONVICTIONS ARE ADMISSIBLE FOR IMPEACHMENT PURPOSES.

Pursuant to Fed.R.Evid. 104(c), the defendant requests a hearing on the admissibility of his prior convictions for impeachment purposes under Fed.R.Evid. 609(a)(1) and (2). The defendant's request for a decision pretrial is prompted by a desire to plan an appropriate trial strategy, determine whether the defendant will testify in his own defense and to afford defendant an opportunity to address impeachment evidence in his opening statement to the jury.

Under Rule 609(a)(2), crimes involving dishonesty or false statement must be admitted and the

---

[1] Rule 401 reads:

"Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Rule 403 reads:

Although relevant, the evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

trial court has no discretion.  Fed.R.Crim.P. 609(a)(1), however, prohibits the admissibility of felony

convictions unless the court determines that the probative value of admitting this evidence outweighs its

prejudicial effect to the defendant.  The government has the burden of establishing that the probative

value of the prior conviction's use outweighs its prejudicial impact.  <u>Government of the Virgin Islands v.

Bedford</u>, 671 F.2d 758, 761 (3d Cir. 1982).  Furthermore, pursuant to Fed.R. Evid 609(b) there is a time

limit which effects whether a prior conviction shall be utilized.

 Thus, the defense seeks notice of whether the government intends to attempt to impeach the

defendant with evidence of prior convictions, what prior convictions they seek to utilize, and the basis

under which they should be admitted.


**POINT III**

**THE DISCLOSURE OF ALL FAVORABLE
INFORMATION TO THE DEFENSE IS REQUIRED
PURSUANT TO <u>BRADY V. MARYLAND</u>.**

 <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) held that suppression by the prosecution of evidence

favorable to a defendant who has requested it violates due process where such evidence is material to

either guilt or punishment.  An affirmative duty is placed on the prosecution to produce such favorable

material for the defense whether it be direct or impeaching evidence.  Such duty is also mandated in the

standard order for discovery and inspection entered by this Court.

 The Court's discovery order required the government to make available to the defense all <u>Brady</u>

material within its possession within ten days from the date of arraignment.  If the government did not

believe that it had an obligation to turn such material over to defendant it had to notify defendant of its

10

declination.  No such Brady material has been received by the defense.

In United States v. Starusko, 729 F.2d 256 (3d Cir. 1984) the Court held that Brady is not a discovery rule but a rule of fairness and a minimum prosecutorial obligation.  The Third Circuit specifically recognized that it was this circuit's "longstanding policy" to encourage the "early production" of Brady material.  Id. at 261.

Knowledge or possession of exculpatory evidence is imputed to the prosecutor as the agent of "the government."  Therefore, if such material is in control of government agencies outside the district, the prosecutor will be deemed to possess it if he/she has knowledge and access to it.  United States v. Scruggs, 583 F.2d 238, 242 (5th. Cir. 1978).  Upon a defendant's request, a prosecutor has an obligation to exercise due diligence to determine if government agencies have any information favorable to the defendant.  United States v. Roberts, 338 F.2d 640, 648 (2d Cir. 1968).

One problem that repeatedly arises in determining disclosure is the differing view between the parties regarding what evidence is exculpatory.  The prosecutor usually takes a very narrow view toward such material, while defense counsel have a much broader view.  If the exculpatory nature of the evidence is doubtful, the prosecutor should turn over his file to the court for Brady inspection.  United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984).   Defendant also requests the pretrial disclosure of impeachment materials that come within the purview of Brady.  The Court in Brady held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."  Brady, 373 U.S. at 87.  With respect to impeachment evidence, "[w]hen the 'reliability of a given witness may be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls with [the Brady] rule."  Giglio v. United States, 405 U.S. 150, 154 (1972).  In applying

11

the Brady rule, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 682.

When the requested Brady material can only be used to impeach the credibility of government witnesses, it is generally sufficient to protect the defendant' rights if disclosure is made the day the witness testifies.  United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983), cert. denied, 464 U.S. 1048 (1984).  Where the impeachment material is not Brady material, early disclosure is not mandated. United States v. Presser, 844 F.2d 1275, 1282-83 (6th Cir. 1988).

However, when Brady impeachment material also falls within the protection of the Jencks Act, 18 U.S.C. § 3500(a), the government may have a duty to disclose the materials prior to trial to satisfy the Brady due process concerns.  See Starusko, 729 F.2d at 263 (compliance with Jencks Act does not necessarily satisfy due process concerns of Brady).  See also Carter v. Rafferty, 826 F.2d 1299, 1305 (3d Cir. 1987) ("Brady rule covers evidence that might be used for impeachment purposes.")  Thus, a trial court has the authority to order pretrial disclosure of material when it "falls more under Brady, instead of or in addition to the Jencks Act." Id. at 265.  This would be the case where Brady evidence exculpatory of the defendant, i.e., not solely impeachment evidence, is in the possession of the government.


**POINT IV**

**DEFENSE REQUESTS EARLY DISCLOSURE OF ALL
JENCKS MATERIALS.**

In most instances, the government does not have a duty to turnover the rough notes and reports of its witnesses until after the witness testifies.  18 U.S.C. § 3500: see also United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983), cert. denied, 464 U.S. 1048 (1984).  However, the trial court pursuant to its

inherent power to control discovery may order the government to disclose all Jencks material prior to trial. It should be noted, that the government is required to retain the rough notes and reports of its witnesses and the failure of the government to preserve such evidence may constitute grounds for reversal. See Government of Virgin Islands v. Testamark, 570 F.2d 1162, 1165-66 (3d Cir. 1978).

Early disclosure of Jencks material will expedite trial by preventing unnecessary delays and interruptions during the course of trial. By turning over such material prior to trial the defense will be prepared to cross examine government witnesses immediately after they have testified. Such disclosure will certainly expedite the trial in this case where there is a large time frame within which the alleged criminal activity occurred, and many potential witnesses that could be called to testify. Accordingly, defendant requests early disclosure of Jencks materials.

## POINT V

### THE GOVERNMENT SHOULD REVIEW THE PERSONNEL FILES OF LAW ENFORCEMENT OFFICERS WHO PARTICIPATED IN THE CASE AND DISCLOSE ANY INFORMATION THAT MIGHT BE HELPFUL TO THE DEFENSE

Prosecutors have an affirmative duty to disclose material evidence favorable to defendants, including exculpatory evidence and impeachment evidence. Brady v. Maryland, 373 U.S. 83 (1963); United States v. Bagley, 473 U.S. 667, 676 (1985). In United States v. Henthorn, 931 F2d 29, 30-31 (9th Cir 1991), the Court held that the government has a duty to examine the personnel files of law enforcement officers it intends to call as witnesses upon a request by defendant for production of such files. Thereafter, the prosecutor must turn over any material that is favorable to the defense.

Therefore it is requested that the Court order the government to review the personnel files of law

13

enforcement officers who participated in this case and who will testify at pretrial hearings or trial.

## POINT VI

**THE GOVERNMENT SHOULD BE REQUIRED TO PREPARE
AND PRODUCE PRIOR TO TRIAL A SUMMARY OF OPINION
TESTIMONY WHICH THE GOVERNMENT INTENDS TO INTRODUCE
THROUGH ANY WITNESS TESTIFYING AS AN EXPERT.**

Pursuant to Federal Criminal Procedure Rule 16(a)(1)(E), the government must prepare and produce, prior to trial, a summary of opinion testimony which the government intends to introduce through any witness testifying as an expert.  This written summary must also contain the reasons or basis for the experts opinion and the experts qualifications.

If the government seeks to introduce opinion testimony through any witness testifying as an expert, the defendant is entitled to a summary report setting forth the reasons or basis of the conclusions and the experts qualifications.

## POINT VII

**DEFENDANT REQUESTS THAT AN EVIDENTIARY
HEARING BE HELD TO DETERMINE WHETHER ANY
OUT OF COURT IDENTIFICATION PROCEDURES WERE
IMPERMISSIBLY SUGGESTIVE, THEREBY BARRING THE
ADMISSION OF IDENTIFICATION EVIDENCE AT TRIAL.**

An evidentiary hearing is warranted when the moving papers allege facts with sufficient specificity to enable the trial court to conclude that contested issues of fact exist.  United States v. Howell, 231 F.3d 615, 620 ( 9th Cir. 2000); United States v. Voight, 89 F.3d 1050, 1067 ( 3rd Cir. 1996). Once a defendant establishes a factual basis for a suppression motion, the burden shifts to the

government to prove, by a preponderance of the evidence, that the evidence is admissible.  United States v. Matlock, 415 U.S. 164, 177 (1974).

In the instant case, it appears that the government may seek to introduce at trial, evidence that the CI identified Mr. Thomas and others in photo arrays shown to him.  Based on the facts set forth in the discovery provided by the government, an evidentiary hearing is required to determine whether the photographic "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" at trial.  United States v. Wade, 388 U.S. 218 (1967); Simmons v. United States, 390 U.S. 377, 384 (1968).

In Simmons v. United States, 390 U.S. 377 (1968), a two prong test for exclusion of identification testimony was established.   The first step requires a determination of whether the particular identification procedure was impermissibly suggestive.  If so, a separate inquiry is required to ascertain whether the suggestiveness created a substantial likelihood of irreparable misidentification. See also, Gov't of Virgin Islands v. Peterson, 553 F2d 324 (3rd Cir 1977).  The procedure used to effect the identification should be examined in light of the totality of the circumstances.  The reliability of the identification "is the linchpin" in determining the admissibility of the testimony.  Manson v. Brathwaite, 432 U.S. 98 (1977); Neil v. Biggers, 409 U.S. 188 (1972); Stovall v. Denno, 388 U.S. 293 (1967).

In determining the reliability of the identification, the Court in Manson elaborated on the standards to be used in determining whether to suppress identification testimony due to suggestive pretrial identification.  Manson v. Brathwaite, 432 U.S. at 114-116.  The Court held that the following factors should be weighed:

> 1. The opportunity of the witness to view the criminal at the time of the crime.
> 2. The witness' degree of attention at the time of the crime.
> 3. The accuracy of any prior description of the criminal by the witness.

4. The level of certainty when identifying the suspect at the confrontation.

5. The length of time between the crime and the confrontation.

In the instant case, the facts, as set forth in the law enforcement reports, require an evidentiary hearing regarding the admissibility of the identification procedure to determine whether any identification was so unnecessarily suggestive and conducive to irreparable mistake that it violates defendant's Sixth Amendment rights and defendant's due process rights and requires exclusion of all identification evidence at trial.

## POINT VIII

### COUNTS TWO AND FOUR SHOULD BE SEVERED

Federal Rule of Criminal Procedure 8(a) permits joinder of offenses in the same indictment in cases involving a single defendant.  Joinder of offenses is allowed under Rule 8(a) if the offenses are (1) of the same or similar character, (2) based on the same act or transaction, or (3) based on acts or transactions that are connected or that constitute parts of a common scheme.  Rule 14 permits a severance of counts if joinder is deemed prejudicial.

There does not appear to be any basis for joinder of the weapons offenses, Counts two and four and related charges with the rest of the indictment.  The only link between the weapons offenses and the drug distribution related charges is that they allegedly are connected to defendant's affiliation with the Bloods street gang.   Otherwise, the two offenses are separate and distinct.  The undue prejudice that would occur were these unrelated offenses tried together is plain.  Furthermore, no prejudice is required to be shown when offenses have been improperly joined in an indictment.  United States v. Dileo, 859 F.Supp. 940, 941-42 (WDPA 1994).

There is no "transactional nexus" between the offenses, nor did they arise out of a common

series of acts of transactions.  United States v. Eufrasio, 935 F.2d 553, 570 (3rd Cir. 1990).  One incident involves the retrieval of weapons by Newark Police from an apartment located at 90 Spruce Street, Newark, New Jersey, the other involves retrieval of weapons by government agents from an apartment located at 725 Martin Luther King Boulevard, Newark, New Jersey.  The government claims that it can prove that Mr. Wilson "possessed" these weapons and sold drugs in connection with this possession.  Count Six of the Indictment charges Distribution and Possession of Heroin with the Intent to Distribute same.  The allegation with regard to Count Six is that Mr. Wilson was involved in the sale of heroin on a single occasion to an undercover officer.  There does not appear to be any "evidentiary overlap" between this incident and the weapons offenses.  Thus the interest of conserving judicial resources is not a strong motivation which would tend to justify joinder.

Finally there does not appear to be "any common scheme or plan" that would justify joinder of the two offenses.  Connecting the drug distribution related charges to the weapons offenses, by simply asserting that Mr. Wilson is a member of the street gang Bloods would be, in effect, reducing the definition of "common scheme or plan" to such a level of generality so as to preclude any distinction between the two offenses.  Dileo, 859 F.Supp. 942.  Joinder of the instant offenses would only cause a jury to cumulate evidence of the separate crimes and conclude that "because he may have done wrong one time, he probably did wrong another time."  Because there is no basis for joinder of offenses, and because of the undue prejudice that would occur from a joint trial, severance should be ordered.  The case will be complex enough without any evidence as to the weapons charges.  If all counts are jointly tried, a grave risk exists that the jury may not only confuse the evidence, but may also infer that Mr. Wilson is a bad person if involved in all of the alleged criminal offenses.

Joinder of these counts violates the federal rules:

17

> Two or more offenses may be charged in the same indictment or
> Information in a separate count for each offense if the offenses
> charged … are of the same or similar character or are based on the
> same act or transaction or no two or more acts or transactions
> connected together or constituting parts of a common scheme or
> plan.

Fed. R. Crim P. 8(a) Where "offenses have been improperly joined in the indictment, severance is

required "as a matter of course without regard to the merits of defendant's claims of prejudice under

Rule 14." United States v. Dileo, 859 F. Supp. 940, 941-42 (W.D. Pa. 1994) (quoting United States v.

Winchester, 407 f. Supp. 261, 264 (D. Del. 1975)).


## POINT IX

**THE DEFENDANT SHOULD BE PERMITTED TO
FILE ADDITIONAL MOTIONS AS THEY BECOME
NECESSARY.**

The defendant requests that he be allowed to file additional motions that may become necessary

as further information becomes available.

18

## **CONCLUSION**

For all the foregoing reasons, defendant respectfully requests that the relief sought be granted.


Respectfully submitted,

s/Angelo Servidio, Esq.
405 Centre Street
Nutley, NJ  07110
973-284-0400

19